TUCKER, P.
In the examination of this case, I think it expedient to take up, first, the bill of exceptions to the opinion of the Court, refusing a new trial, since, if that opinion is disaffirmed, the other questions will be comparatively of little importance.
In approaching this subject, we are met at the threshold by the objection, that this Court ought not to interfere against the concurrent opinions of the Court who heard the cause, and of the jury' who are the peculiar judges of the credibility of the witnesses. But this objection loses much of its force, where, as in this case, the evidence is chiefly documentary; where there is no conflict of witnesses; where the only witness in the cause is the resident of a distant State, and his testimony is given by deposition, and not in person. In such a case, there appears to be no superior advantages enjoyed by the jury and the trying Court, over this Court, and we may as. safely pronounce upon the question of new trial as the Superior Court itself.
Upon examining the proofs, I am satisfied that the verdict is contrary to evidence. There can be no question in the case about *352 the amount of the plaintiffs’ bill, or the actual purchase of them by Wilson for the defendants, of goods to that amount, -which came to their hands, and for which they are debtors to somebody. The only questions are, whether Wilson purchased for *himself, or for Morrison &• Foster ; and if for the latter, whether he was authorized to purchase for them.
That Wilson did not purchase for himself, but that the purchases were for Morrison & Foster, is very clearly established. Hewitt, whose testimony stands, I think, perfectly fair, says, that “he was Wilson’s clerk, and that Wilson was in the habit of buying goods in New York for the defendants as their agent; that in that capacity, he purchased for them sundry bills of goods from the plaintiffs, the bills for which were made out in the names of Morrison & Foster, as purchased by ' them, and on their account, and handed to Wilson as their agent; and he forwarded the goods (he does not say the bills or invoices) to them accordingly. That such purchases were made by Wilson as agent of Morrison & Foster, and not on his own account. This testimony is plenary to the point. And it is fully sustained by the other proofs in the cause, introduced by the defendants themselves. Those proofs are to be found in the invoices forwarded by Wilson, and in the letters which are made evidence in the cause, as they are introduced by the- defendants. In the invoice of the 23d October 1833, opposite the third item, .we find these important words in red ink, (“Downer & Co. begins.”) Why was it that Wilson in rendering his account against the defendants, should state where the articles purchased of Downer & Co. began, if he had purchased them on his own account from Downer & Co.; and was selling them on his own account to Morrison & Foster? Again, why was it that he purchased of Downer & Co. thq identical goods which were to be forwarded to Morrison & Foster, if he purchased for himself and not for them? Why was it that he could afford to sell them goods bought of Downer & Co. without a cent of profit, except a commission? Why was it that he charges commission of 2% per cent, on goods thus alleged to have been sold by himself? Why is it that one half of the *goods bought of Downer & Co. are not to be found in his account at all? Downer & Co;’s bills of the 20th of November 1833, 21st November and 30th April 1834, are no where included in the invoices, or in the account current of Wilson. Only about 2S0 dollars worth of the goods, (being those sold on the 23d October 1833,) are to be found in Wilson’s account. What has become of the other 212 dollars worth? Wilson has not charged them. No invoice for them from him, has been produced, though we have his account down to May 31st, 1834; and though it is admitted on all hands that there were bought of Downer & Co. 464 dollars worth of goods. Is it that the original invoices from Downer & Co. for the last purchases,' (which were delivered to Wilson, ) were sent on by him to the defendants, and have been suppressed. They must have received some invoice for these goods. Where is it, and from whom received? Again, if Wilson was not their agent, and did not purchase for them, if he holds them as his debtor, and not the debtor of Downer & Co., if he was a purchaser from Downer & Co. on his own account, where are the invoices which he received from them of those' purchases? Is it conceivable that if such had been given, they would not have been produced to shew beyond controversy, that the credit was given to him? And though, on such a supposition, they would, indeed, be in Wilson’s hands, yet the privity between him and the defendants justifies the demand of such evidence, if it really has existence.
Besides the testimony of Hewitt, and these pregnant circumstances, we have, however, the conclusive evidence afforded by the correspondence. The letters of Downer & Co., which are made evidence, as they are introduced by their adversaries, are full and explicit. They say, “At the request of Mr. Wilson, we opened an account with your house, which has been continued from time to time without a suspicion that the business *was misunderstood. We have always viewed Mr. Wilson as a commission merchant, purchasing those goods on your credit, and for .your account.” And accordingly, the account rendered with another letter, is opened not with Wilson, but with Morrison & Foster. Again, the plaintiffs did not treat Wilson as their debtor. Though the credit had expired some months, they did not demand payment of him. “We called upon Mr. Wilson,” say they, “a number of times, to learn whether he had received any remittance from you for our account, and his answer has usually been in the negative, but that he expected to hear from you in a few days.” Thus it clearly appears they did not look to Wilson for payment, but to Morrison & Foster. And how is it with Wilson? When he learns that Downer & Co. have “dunned the defendants,” instead of at once repelling the pretension, and saying that he is their debtor, he draws upon Morrison & Foster for the identical amount of the bill of Downer & Co. against them, and Downer & Co. instead of enforcing their demand against the house in New York, their next door neighbour, take this draft on a distant firm in Virginia. And what was the defendants’ conduct? Knowing they were largely in arrears, and the business having been done through Wilson, they themselves suggested the draft. It was a prudent suggestion, as their transactions had been through Wilson. But before they accepted it, they forwarded a check to Wilson, with instructions to pay Downer & Co.; thus distinctly recognizing the debt. And, moreover, they write to Downer & Co. that if the proceeds were not paid to them, they would accept the draft. Here, I think, is a complete recognition of Downer & Co.’s demand, and of course of the *353 agency. But in truth that recognition was not wanting. Wilson appears to have been only a commission merchant. The goods were not bought of him, but through him from others, and where that is the case, the receipt of the goods is a ratification *of the agency. Nay, it is impossible to conceive that a commission merchant in New York should, without previous orders, have purchased and forwarded to a house in the back country of Virginia, a quantity of goods which that house receives, retains and sells-. Such a course of things furnishes irresistible presumption of previous orders. I am therefore of opinion that the agency is proved; and as full notice was received by Morrison & Foster, while they had ample funds in their hands, the verdict should have been for the plaintiffs. In the case of Thornton v. Davenport, 9 Barn. & Cres. 78, Justice Bayly says, very strongly, “In a case circumstanced as this case is, where it does not appear but that the man who has had the goods has not paid for them, what is the justice of the case? That he should pay for them to the seller, or to the solvent agent, or to the estate of the insolvent agent, who has made no payment in respect of these goods? The justice of the case is, as it seems to me, all on one side, namely, that the seller shall be paid, and the buyer (the principal who got the goods) shall be the person to pay him, provided he has not paid any body else. He will be liable to pay for them either to the plaintiffs or to M’Kune’s estate. The justice of the case, as it seems to me, is, that he should pay the plaintiffs who were the sellers, and not any other person.” And so I think in this case, upon the evidence now presented. How the aspect of the case may be changed upon a second trial, it is of course impossible to conjecture. The defendants may, perhaps, give a new colour to the transaction, by shewing that the credit was given to Wilson, and not to themselves. I am well sátisfied, however, that justice demands that a new trial should be had between the parties.
As to the exceptions taken in the progress of the trial, I am of opinion that no error appears in the 1st, 2d and 4th. The third is very obscure, but as it is a mere abstract ^'opinion, it cannot be important to examine or decide it, as it can scarcely arise again on the future trial.
STANARD, J.
The view I take of this case renders unnecessary a particular consideration and decision of the questions presented by the exceptions of the plaintiffs in the Court below, in the progress of the trial before the jury. The exception to the opinion of the Court overruling the motion for a new trial, presenting in connection with the other exceptions, all the •evidence that was given or offered, if the verdict be warranted by that evidence, it would follow that the plaintiffs have sustained no injury from any error that the «Court may have committed in the progress of the trial; and this being manifest on the record, I should hesitate, at least, to reverse for such innoxious error. If, on the contrary, the verdict be not warranted by the evidence, but the law on the facts distinctly proved by, or plainly inferrible from it, clearly entitles the plaintiffs to recover, the decision of the minor questions presented by the other exceptions becomes supererogatory.
The evidence incontestibly establishes these facts. Wilson, professing to act as the agent of the defendants, purchased sundry goods of the plaintiffs, which they charged on their books to the defendants, and bills of these purchases, charging the goods to defendants, were made out by the plaintiffs and sent with the goods to Wilson ; and the goods were by him forwarded to and received by the defendants. At a subsequent time, the defendants were informed by the plaintiffs of the fact that such purchases had been made, and payment of the amount was demanded of them; and when that information was given, and demand made, the defendants had not paid Wilson or any other person for the goods; nor had they made any such payment when, this suit was instituted. Pausing here, without a resort to other pregnant and significant facts that are established directly, *or by fair inference from the evidence, and that adds strength to the plaintiffs’ right to recover, we have it ascertained that the goods of the plaintiffs which they believed they sold, and which they charged to the defendants, have come to the hands of the defendants, they intending to purchase them from some one at the prices at which they are charged by the plaintiffs; and that the purchase money has not been paid by them to any one. The plaintiff's are creditors as vendors, the defendants are debtors as purchasers of the goods. The plaintiffs are entitled to receive, the defendants are liable to pay the price. What, then, prevents the appropriation of the obligation created by the purchase of the goods to the satisfaction of the debt created by the sale of them? It is this, according to the argument of the defendants ; a supposed want of privity between the parties. It is objected that Wilson was not the authorized agent to make the purchase or pledge the responsibility of the defendants; and that they are purchasers from Wilson, and responsible to him only. That Wilson could not bind them to the plaintiffs, and they have bound themselves to Wilson only. That the relation of vendor and vendee subsists between Wilson and them, and not between the plaintiffs and them.
Assuming that Wilson purchased as agent of defendants, without their previous authority or subsequent ratification, yet regarding the transaction as it really was, not as the defendants believed it to be, Wilson was not the vendor, nor can he so affirm it in derogation of the plaintiffs’ claim, without a flagrant violation of faith. That faith compels him to disavow the *354 character of vendor. His transaction with the plaintiffs made them the vendors, and professed to make the defendants the vendees; and it is by force of that contract only, that the title to the goods has passed out of the plaintiffs. He was not for a moment owner of the goods; and compatibly with good faith to the plaintiffs, or even the defendants, *he could not sell them as owner. Nor did he in fact, whatever was the belief of the defendants, sell the goods to them. There is nothing then to sustain the relation of vendor and vendee between Wilson and the defendants, but the alleged belief of the defendants that they purchased from, and were responsible to him only; and the only objection to such a relation between the plaintiffs and defendants is, that the defendants did not know that the plaintiffs were the vendors, and believed that the purchase was made from Wilson. If the plaintiffs, who were the owners and vendors of the goods, and believed the defendants to be the purchasers, cannot recover the price from the defendants, who have received the goods, and have not paid for them, because the defendants believed they were purchasing them from Wilson, it must be because the existence of such a belief negatives the fact of the defendants’ assent to a purchase from the plaintiffs; and the existence of some principle of law which renders necessary to sustain a suit for goods sold, not only the assent of both owner and purchaser to the sale and purchase as it respects the commodity sold and its price, but reciprocal knowledge of the owner and purchaser at the time; that they stand in the relation of vendor and vendee to each other, and to no other. Now, such a principle of law would not only absolve the defendants from the action of the plaintiffs, but from that of Wilson also. If the belief of the defendants that they purchased from Wilson, protects them from the claim of the plaintiffs, who did sell as they believed, to the defendants,- and from whom the consideration passed that the defendants have in fact received, because it shews .a want of assent on their part to a contract with plaintiffs; a fortiori, the knowledge of Wilson that he was not the owner and vendor of the goods, and that the sale was by his agency made by the plaintiffs, would disable him from maintaining a suit as vendor; and the result would be, that defendants, confessedly having received *the goods as vendees, and not paid for them, could not be charged in an action for goods sold and delivered by either plaintiffs or Wilson. This ascertains that there is no such principle of law as that on which the defendants must rest for their exemption from the action of the plaintiffs. The doctrines of no division of the law, have a closer affinity with the conclusions of sound reason and natural justice, than those that define the rights and responsibilities that arise out of contracts, especially those of a commercial character, and mould the remedies on them. These are, in the main, the offspring of practical good sense, conversant with the usages and conveniences of civilized life, impregnated by the principles of natural equity and justice; and they bear the lineaments that might be expected from such a lineage. The defendants are indisputably liable eitner to the plaintiffs or to Wilson for the unpaid price of the goods. Similar difficulties exist as .to the full assent of both parties to the contract of sale and purchase, when, either Wilson or the plaintiffs present themselves as vendors. How will the law appropriate the confessed obligation of the defendants to pay? Will it draw it to Wilson who neither owned nor in truth sold the goods, and who is bound by good faith to the plaintiffs to disavow the character of owner and vendor, for the purpose of intercepting the claim of the plaintiffs to it, who were in truth the owners and vendors? Will it so far defer to the belief of the defendants that they purchased from Wilson, as to fix on him only the right of action on the sale, for the price of goods he did not own and did not sell, and hold the belief of the plaintiffs that they sold to the defendants, coupled with the facts that the consideration in truth passed from the plaintiffs, and has been received by the defendants, inadequate to fix the right of action for the unpaid price in the plaintiffs? There can be but one answer to these questions, and that is in the negative. Many examples might be given, illustrative *of that. principle of the law which appropriates the obligation of the debtor who owes to him from whom the consideration proceeds, and is entitled to receive, though the debt was contracted under- the full conviction, that another was the creditor. Thus a purchase is made from a factor, the purchaser supposing the factor to be owner and dealing on his own account, and the fact that goods belong to a principal is latent and unknown. In such a case, if before payment to, or other dealing with the factor by the purchaser, which would inflict injury on him if he were held responsible to the principal, the purchase money should be demanded of the purchaser by the principal, he might as vendor sue the purchaser, and it is no defence that the purchaser had dealt with the factor as owner and vendor of the goods. Paley on Ag. 324; Moore v. Clementson, 2 Camp. 22; George v. Claggett, 7 T. R. 359. And in the still stronger case, when an agent purchases in his own name, for an unknown principal, the vendor, if the principal has not accounted with his agent, may, on discovering him, treat him as the vendee of the goods, and sustain a suit as vendor against the principal as vendee. Sadler v. Heigh, 4 Camp. 195; Nelson v. Powell, 3 Doug. 410. If, then, the case presented no other facts than those I have before stated as incontestibly established by the evidence, the plaintiffs would in my opinion be entitled to recover. The case, however, presents other facts, which, if the correctness of this opinion were doubtful, dissipate *355 every doubt. The invoices introduced in evidence by the defendant, afford the most persuasive, if not conclusive evidence, that to the knowledge of the defendants, Wilson purchased the goods for the defendants from others, and was not the vendor of them himself; and when with this is coupled the fact, that the price has not been paid by the defendants, and that they, in effect, promised after full notice that the plaintiffs were the vendors to pay the purchase money to them, Wilson ^assenting thereto, the title of the plaintiffs to recover is plenary in all respects.
A full answer is furnished by what I have said, to the exception of the defendants to the evidence of the purchase by Wilson, representing himself the agent of the defendants. That objection is, that it was not admissible until preliminary proof was given that Wilson was the agent. The foregoing opinion ascertains, that the plaintiffs may have a right to recover on that, and the other proofs in the case, though he was not the agent, either by previous appointment or subsequent adoption, other than the receipt of the goods by the defendants. Besides, if proof of agency were necessary, it might be shewn by proof of subsequent adoption by the defendants of his acts, and then the regular order of the evidence would be to prove, first, his acts, and then offer evidence of the defendants’ adoption of them.
My opinion, therefore is, that the judgment is erroneous, and ought to be reversed, and the cause remanded for a new trial of it in the Court below.
PARKER, J., concurred.
The judgment of the Court below reversed, and a new trial awarded.